ORIGINAL FILED

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Indiana

14 DEC 19 PM 5:34

| | | |
|---|---|---|
| United States of America<br>v.<br>Eduardo Martinez, Gisela Leyva-Gamez, Rigoberto Martinez, Cesar Rosales, Juan Rosales-Suarez<br><br>*Defendant(s)* | ) ) ) ) ) ) ) ) | Case No.<br>1:14MJ 68 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 17, 2014__ in the county of __Allen__ in the __Northern__ District of __Indiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | knowingly or intentionally possess with intent to distribute a controlled substance, namely 1 kilogram or more of heroin, a schedule I controlled substance; |
| 21 U.S.C. § 846 | knowingly or intentionally conspire to possess with intent to distribute a controlled substance, namely 1 kilogram or more of heroin, a schedule I controlled substance. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

DEA Task Force Officer Peter Mooney
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __12/19/2014__

S/Roger B. Cosbey
*Judge's signature*

City and state: __Fort Wayne, IN__   Roger B. Cosbey, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

Comes now your Affiant, Peter Mooney, a Task Force Officer with the Drug Enforcement Administration (DEA), first being duly sworn, now deposes and says:

Your Affiant has been a deputized Task Force Officer (TFO) with the DEA for approximately 3 years and has been an officer with the Fort Wayne Police Department (FWPD) for just over 10 years. Prior to being assigned to the DEA Task Force, your Affiant was assigned to the FWPD Gang Unit for approximately 9 months and before that to street patrol since 2004. Your Affiant has experience with clandestine drug laboratories, physical surveillance, confidential sources, and electronic surveillance, among other investigative techniques. Your Affiant has attended Jet Way Training, which trains law enforcement officers on how to effectively handle interdiction stops of various forms of transportation, and the training included locating hidden compartments within vehicles and conducting interviews in narcotics-related instances. Your Affiant has been a member of the FWPD Emergency Services Team for the past 5 years and has had extensive and advanced training on police and SWAT tactics related to drug raids. Through your Affiant's experience with the Emergency Services Team, your Affiant has participated in the service of hundreds of narcotic search warrants. Your Affiant has investigated large indoor marijuana grows involving hundreds of plants and other complex investigations involving marijuana, crack cocaine, cocaine, methamphetamine, heroin, and large currency seizures. Your Affiant is also a Defensive Tactics Instructor for the FWPD. Based on this experience, your Affiant has become familiar with the methods of illegal drug traffickers.

Pursuant to an Order entered on November 17, 2014, the Court authorized the interception of wire and electronic communications to and from (260)416-9420 (TARGET TELEPHONE ONE), which was a cellular telephone primarily used by Eduardo MARTINEZ

(MARTINEZ). Interceptions began on November 19, 2014, and were authorized by the Court to continue for a period of 30 days. Pursuant to an Order entered on December 15, 2014, the Court authorized the interception of wire and electronic communications to and from (260)440-1711 (TARGET TELEPHONE TWO), which was a second cellular telephone primarily used by MARTINEZ. Interceptions began on this telephone on December 16, 2014, and were authorized to continue for 30 days.

Not all relevant calls and text messages intercepted over TARGET TELEPHONES ONE and TWO are described in this affidavit. Moreover, for those calls summarized, not all relevant portions of such conversations have been described or quoted. To the extent that quotations are used in the descriptions below, the quoted segments are based on linesheets, reviews of recordings, and preliminary translations, and not final transcripts. All dates and times are approximate and based on the monitoring equipment at the time the call or text message was intercepted. When provided, the times are listed in military time and include hours, minutes, and seconds, with these times being in Central Standard Time (because the monitoring station was located in Merrillville, Northern District of Indiana). An interpretation of the substance of the communications based upon your Affiant's training and experience and the information developed in this investigation is provided, often in brackets within quoted material.

The intercepted communications were often conducted in Spanish, and monitors fluent in English and Spanish were utilized. The wiretap monitors were contract linguists, and they are required to take a language proficiency examination in English and Spanish, with this examination also required by DEA as well as their employer. The linguists have further received specialized training regarding minimization rules, transcription of calls, voice recognition, code words, and other topics particular to monitoring wiretaps of criminal activity, and your Affiant

believes that this specialized training enhances their ability to translate and understand drug code and conversation on a wiretap. Based upon this training, your Affiant believes that the monitors have provided reliable translations and transcriptions of intercepted calls and texts.

Interceptions over TARGET TELEPHONE ONE revealed that MARTINEZ was coordinating a large heroin transaction, with Gisela Celeste LEYVA GAMEZ (LEYVA GAMEZ) supplying the heroin. On December 14, 2014, in session 1947 at 11:32:27, LEYVA GAMEZ used (623)764-9718 and called TARGET TELEPHONE ONE. LEYVA GAMEZ said that she was "coming over there with you. . .I'm here in Columbus. I'm going to Cleveland and from there I'm going over there with you. I'm going to turn in some paper [likely drop off some cash as payment for drugs]." In session 1953 at 11:54:55, MARTINEZ called an unknown male using a particular telephone, and MARTINEZ confirmed his expected receipt of a heroin shipment, "They already called me. It's a yes. . .the dark suits [black tar or brown heroin]. . .I'll call you when they're here." The unknown male asked if it was going to be whole or complete ones, and MARTINEZ responded in the affirmative, meaning in your Affiant's opinion that it would be whole kilograms of heroin.

On December 14, 2014, at 15:49:20 in session 1963, LEYVA GAMEZ called from a different number, (513)635-7059, as confirmed by monitor voice recognition, and said, "This is the other number. I'm on my way over to you. I'm on the road now." At 18:45:47 in session 1981, MARTINEZ sent a text message to LEYVA GAMEZ regarding their meeting location, which was an address of a public area near his residence in Fort Wayne, Allen County, Indiana. At 19:17:27 in session 1982, LEYVA GAMEZ was preparing to meet MARTINEZ, and she said, "I just got here, but you didn't give me your home address, there are stores. . . ." MARTINEZ responded that he was "about three minutes away," and LEYVA GAMEZ said, "I

am in a green car with New York license plates." Later at 19:47:15 in session 1987, MARTINEZ talked to LEYVA GAMEZ on (513)635-7059, and LEYVA GAMEZ confirmed that "they [packages of heroin] are going to be ready for tomorrow. I was texting my guy [her supplier]. . .He is telling me that it/they needed to arrive in Indianapolis but that those people [couriers delivering the heroin] are not familiar with the Fort Wayne area. . .He is going to see to it that they arrive over here or I can go pick them up." MARTINEZ wanted to know if it was going to be tomorrow for sure, and LEYVA GAMEZ said, "He told me that it was. I already told him that you have the money for two [believed to be two kilograms of heroin] and he said that it was okay and that it was fine."

On December 15, 2014, in session 2024 at 13:39:48, LEYVA GAMEZ was using (513)635-7059, and she confirmed aspects of their upcoming heroin transaction in your Affiant's opinion: "He [her supplier] is saying for you to have the money ready, 10 by 10 [believed to be a reference to the money in bundled form]. . .in plastic [heat sealed in plastic to prevent a dog alert]. . .It's a sure thing! I wouldn't do all this running around for nothing. . .They'll [drug couriers] be here in 24 hours." After MARTINEZ asked if the "packets are 750 grams," LEYVA GAMEZ responded, "The packets are 750. I'm going to give you two [front, or provide on a consignment basis, two "packets" of heroin]." Later on December 14, 2014, a uniformed police officer performed a traffic stop on the vehicle occupied by LEYVA GAMEZ, and LEYVA GAMEZ provided identification in this name.

On December 16, 2014, in session 2050 at 10:35:30, LEYVA GAMEZ used (513)635-7059, and she called MARTINEZ on TARGET TELEPHONE ONE. LEYVA GAMEZ said, "The man [her supplier] just called me; they're going to call me in an hour. The things [heroin] are here already. . .The man is telling me if you can get a garage, or something, so that they can

open the material so that they can take it [heroin] out. . .you know, where you can't see it [meaning that the delivery and transaction would be hidden from view of possible surveillance or the public within the garage]." MARTINEZ said, "Let me call my brother [believed to be Rigoberto MARTINEZ, also known as "RIGO" (RIGO)] to see if we can take it out in his girlfriend's garage." At 17:41:41 in session 2079, MARTINEZ talked with LEYVA GAMEZ, and she said, "the man. . .said those things [heroin packages] are coming in a trailer. . .the man told me. . .from the third one [one of the heroin packages], you know how it's three, I need for you to cut me 50 from there [weigh and remove a quantity of the heroin]. . .so I can take them somewhere else [deliver to someone else]. . .Do you have something to measure it with [a scale]?" She further stated, "Those things [heroin]. . .they are going to bring them in a car not in the trailer [heroin will be hidden in the car and not the trailer]."

On this same date in session 2082 at 19:24:23, MARTINEZ and LEYVA GAMEZ talked more about MARTINEZ being fronted part of the heroin shipment. MARTINEZ asked for LEYVA GAMEZ to "tell the man to let us work them [distribute the heroin to generate money] and. . .we're going to pay him one [pay cash for one of the heroin packages], and if he lets us work the other ones, he should give us at least one week for each [demonstrating a fronting arrangement with the remaining portion of the heroin shipment]." MARTINEZ continued, "I think that the two will go [sell] in one week. I need to have work [heroin to sell in order to make money] so I can show the people [distributors or customers of MARTINEZ, because such individuals often will not buy certain drugs without first inspecting the quality]." LEYVA GAMEZ agreed by saying, "I understand. It's for sure. . .I already told the man that you're trustworthy." In session 2083 at 20:08:05, LEYVA GAMEZ called MARTINEZ back and said, "The man says to go ahead forward, and for me to give him the money for one [thereby

accepting MARTINEZ's financial arrangement and accepting a stake in MARTINEZ's future heroin distribution]. He is going to call the people [the couriers who are delivering the heroin] and let them know that they will only get the money for one. . .and the other two, he said to leave it up to me, and if I trust you enough to leave [front] you the other two, to go ahead and leave you the two." Restating the agreement, LEYVA GAMEZ said, "Yeah, okay. You give us the money for that one, and I'll leave you the other two." Later in session 2088 at 21:22:22, MARTINEZ sent a text message to LEYVA GAMEZ about tomorrow's anticipated delivery schedule: "Listen, I have an appointment tomorrow in Indianapolis with immigration. It's going to be in the afternoon when I get back. I'll be back at 3:30."

On December 17, 2014, in session 2112 at 12:23:44 on TARGET TELEPHONE ONE, MARTINEZ spoke with LEYVA GAMEZ, and she stated, "The things [heroin] are already here." MARTINEZ responded that he would "arrive in about two and a half hours." In session 2122 at 13:43:38, LEYVA GAMEZ talked to MARTINEZ, and she said, "These men don't want to give me the things in a public place. They're scared that something might happen. They want to give them to me in an enclosed place. . .I gave them the address of the hotel, and they don't want to show up there." MARTINEZ said in response, "Okay, let me. . .I need an hour." In session 2124 at 13:46:16, MARTINEZ called RIGO at (260)442-7701, and MARTINEZ asked, "Can we unload there? They want to unload the things [heroin] there." RIGO said, "Let me put the dog in and I'll check. . .Is it a small one?" MARTINEZ then said, "They haven't told me. I think a truck or a small car," and RIGO then said, "Let me go see the garage." MARTINEZ then stated, "Alright, I'll get there like in one hour," and RIGO said, "Alright." In session 2131 at 14:00:57, RIGO and MARTINEZ talked again, and RIGO said, "There's a big mess here. I don't know if one will fit because. . .a little car?. . .If it's a small car, you can put it in here."

MARTINEZ then asked if they could "unload" in the alley "as if we were working like mechanics on the car," and RIGO said, "Yeah, I'll just open the garage and they can put in the whole front [of the vehicle], or almost the whole car will fit."

On TARGET TELEPHONE TWO in session 43 at 15:16:52, LEYVA GAMEZ next called MARTINEZ, and she said, "These people [drug couriers] are coming in a trailer. . .Give me the address so I can give it to them. They are desperate and they want to leave." MARTINEZ said, "I thought it was a small car, because my brother was going to let me use his garage at his house. But the trailer does not fit." LEYVA GAMEZ then responded, "It's not so that the trailer would go all the way in, only so that it doesn't look suspicious. They're scared. They're asking for something small just so they can get there and unload, but not in a public place." MARTINEZ also mentioned the possible option of a warehouse, but he had to call someone about this option. At 15:51:24 in session 2151 on TARGET TELEPHONE ONE, MARTINEZ texted an address to LEYVA GAMEZ for a proposed meeting location, not RIGO's residence. After texting the other Fort Wayne address, MARTINEZ talked to LEYVA GAMEZ in session 54 on TARGET TELEPHONE TWO. MARTINEZ talked about not being able to get a hold of the man with the warehouse, and LEYVA GAMEZ discussed further what sort of location the couriers were wanting in order to unload. In session 62 at 16:22:14, MARTINEZ said that he saw LEYVA GAMEZ for their meeting. At about this time, surveillance officers generally observed MARTINEZ meeting with LEYVA GAMEZ in a public parking lot in Fort Wayne. In session 2158 at 16:57:32 on TARGET TELEPHONE ONE, MARTINEZ told RIGO that "it's a truck. . .I'll be there in about five minutes."

Based upon surveillance observations and the context of the interceptions, your Affiant believes that LEYVA GAMEZ or the couriers were dissatisfied with the initial meeting spot

selected by MARTINEZ because it was too public; as a result, they subsequently went to the Fort Wayne residence provided by RIGO. Surveillance officers watched as LEYVA GAMEZ entered MARTINEZ's vehicle, a black Chevrolet Trailblazer, and a white pickup truck with a small trailer then followed MARTINEZ's Trailblazer. Based upon the observations of surveillance, the Trailblazer was occupied only by MARTINEZ and LEYVA GAMEZ, but with the window tint, it was difficult to confirm whether anyone else was in the Trailblazer. Surveillance officers then followed these vehicles to the area of a particular residence on Butler Street, with this residence known by your Affiant to be RIGO's residence. There were two individuals in the white truck who were later identified as Cesar ROSALES (ROSALES) and Juan ROSALES-SUAREZ (ROSALES-SUAREZ). Surveillance was unable to determine which one was driving.

Officers gathered in the area of the Butler residence, and officers in full police uniform approached the detached garage of the residence about ten minutes after the vehicles arrived at the Butler residence for the heroin transaction. Upon the approach of the garage by the officers, one officer deployed a distraction device, and ROSALES and ROSALES-SUAREZ got onto the ground in the area of the white truck and garage as instructed by officers. The white truck was marked with a purported business logo regarding Rosales brothers landscaping. LEYVA GAMEZ, MARTINEZ, and Ricardo Martinez all ran on foot from the area of the garage, with Ricardo Martinez being MARTINEZ's adult nephew and possibly already present at the Butler residence. The Butler residence was a two-story home with a detached garage behind the house and with the garage accessed through a rear alley, with officers approaching via this alley. When officers got to the garage, the trailer from the white truck was unhooked and parked near the garage, and the white truck was backed partially into the garage. LEYVA GAMEZ was

physically apprehended after a short foot pursuit, and MARTINEZ was also apprehended between some houses after a short foot pursuit across the street, with MARTINEZ stopping after a police dog was released. After these arrests were made, RIGO was called out from within the Butler residence, and he was then taken into custody.

Consent to search was obtained regarding the Butler residence and detached garage on the premises. In the garage, officers observed the white truck parked partially in the garage. Near the truck and sitting on the garage floor, officers observed a plastic crate with multiple plastic-wrapped bundles and with some empty gas cans on top of the bundles. Officers located four bundles wrapped individually in plastic, diapers, and tape, with toothpaste or a similar item intermixed with the wrapping (which is a common tactic to hide drug odor from a drug dog). Inside the outer wrappings, officers observed heroin heavily wrapped in more tape and plastic, with one of the bundles field testing positive for heroin. Each of the four bundles weighed between approximately 850 and 900 grams with the internal packaging, with the total weight then being about 3.5 kilograms. In your Affiant's opinion, this amount is an amount intended for distribution and is an amount well beyond any personal consumption amount, with this opinion strongly reinforced by MARTINEZ's drug distribution activity over interceptions. The white truck had a Tennessee license plate, and near the truck, officers located some tools which were used to lower the spare tire and open a suspected hidden compartment within the undercarriage of the truck, with your Affiant suspecting a fabricated compartment. A cellular telephone was located in the grass near the Trailblazer, with this telephone appearing to have been thrown down during the arrest process.

Officers went to MARTINEZ's residence on West State Boulevard, and a consent to search was obtained. Within this residence, officers found a stolen handgun, a shotgun with a

pistol grip, an AK-47 style rifle, a scale, several hundred grams of suspected cocaine (which field tested positive for cocaine), a bottle of a common cocaine cutting agent, and some cash.

Interviews were conducted, and LEYVA GAMEZ waived her Miranda rights and agreed to speak with officers. LEYVA GAMEZ admitted to brokering the heroin deal for MARTINEZ. Leading up to her arrest, LEYVA GAMEZ admitted meeting with MARTINEZ for the purpose of finalizing this heroin deal, and she communicated with the drug couriers who were bringing the heroin to the transaction with MARTINEZ, with the drug couriers being the two men in the vehicle with the trailer. The drug couriers followed her and MARTINEZ to a residence, and upon arrival there, the couriers backed up the truck part way into the garage in order to unload the heroin. Your Affiant notes that there were apparent fresh scratches or scrapes on the concrete floor of the garage consistent with someone getting under the truck with the long tools and obtaining the hidden shipment. LEYVA GAMEZ confirmed that an individual in Mexico had provided the heroin to the two drug couriers, whom she did not know by name, and that she coordinated the final delivery of the heroin to MARTINEZ.

Regarding RIGO's participation in the heroin delivery by providing a location for the shipment to be unloaded and stashed, there were previous interceptions demonstrating his ongoing participation in MARTINEZ's drug trafficking and knowledge of MARTINEZ's drug trafficking. For example, on November 26, 2014, in session 879, a particular telephone sent a text message to TARGET TELEPHONE ONE saying "Buddy, something arrived today at the Butler address." In session 881, MARTINEZ called RIGO at (260)442-7701, and said that his buddy contacted him and said that "something will arrive there." RIGO said that he was going to be there today but that the "mailman already passed by here [demonstrating possible drugs arriving in a package and RIGO's responsibility of taking possession of the package]." On

November 27, 2014, in session 998, another male asked if MARTINEZ got the "picture," saying that "it says that it arrives tomorrow. . .for Butler." In session 999, MARTINEZ talked to RIGO, who was using (260)442-7701, and MARTINEZ informed him that "that [package] is going to arrive tomorrow." RIGO then confirmed the particular address on Butler, which was the same address where the heroin shipment was later unloaded, and RIGO said that he would keep checking on the "box." In session 1001, one of the males provided MARTINEZ with the tracking number. After checking on the package, MARTINEZ sent RIGO, (260)442-7701, a text message saying "It will arrive tomorrow at the end of the day it's coming on the brown [possibly a reference to UPS]."

MARTINEZ kept checking on the package, and on November 29, 2014, in session 1181, MARTINEZ told one of the males that the arrival date "changed, now it says until Monday. . .it still says it's in transit." On December 1, 2014, in session 1367, MARTINEZ talked to a male, and after MARTINEZ talked about checking on the undelivered package, the unknown male mentioned that "there are only nine, not the thirty that they had said. . .it's only nine point six, that's the total weight [of the package]. I don't know how many are in there." On November 28, 2014, your Affiant and other officers seized this package at a Fort Wayne UPS facility, and a drug dog alerted to the package. On December 2, 2014, your Affiant obtained a federal search warrant based upon the dog alert, and the package was found to contain suspected marijuana weighing approximately 2,850 grams, with this marijuana field testing positive.

Your Affiant has not included each and every fact known or provided by members of the DEA, FWPD, or other law enforcement officers concerning the individual events described herein. The information contained in this affidavit is based on information provided primarily to your Affiant by other law enforcement officers.

Based upon the above information, your Affiant has probable cause to believe that MARTINEZ, Rigoberto MARTINEZ (also known as "RIGO"), LEYVA GAMEZ, ROSALES, and ROSALES-SUAREZ did knowingly and intentionally possess with intent to distribute a controlled substance, and conspire to possess with intent to distribute a controlled substance, namely 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of 21 U.S.C. sections 841 and 846.

The foregoing facts are true to the best of your Affiant's knowledge and belief, and further your Affiant sayeth naught.

Peter Mooney
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me, this 19th day of December, 2014.

**S/Roger B. Cosbey**
Roger B. Cosbey
United States Magistrate Judge
Northern District of Indiana